CJR
7-23-19



FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 SEP 18 PM 12:46

CLERK'S OFFICE
AT BALTIMORE
BY _____

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

Lauren E. Perry*
Assistant United States Attorney
lauren.perry@usdoj.gov

Mailing Address:
36 S. Charles Street, 4th Floor
Baltimore, MD 21201

Office Location:
36 S. Charles Street, 4th Floor
Baltimore, MD 21201

DIRECT: 410-209-4839
MAIN: 410-209-4800
FAX: 410-962-0716

July 22, 2019

Jenifer Wicks
Law Office of Jenifer Wicks
400 7th Street NW Suite 202
Washington, DC 20004

    Re:    <u>United States v. Corey Alston</u>, Criminal No. PX-19-158

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Corey Alston (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. **If this offer has not been accepted by July 31, 2019, it will be deemed withdrawn.** The terms of the Agreement are as follows:

Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Racketeering, in violation of 18 U.S.C. § 1962(c). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

**Racketeering, in violation of 18 U.S.C. § 1962(c):**

On or about the time alleged in the Indictment, in the District of Maryland:

1) That an enterprise existed as alleged in the indictment;
2) That the enterprise affected interstate or foreign commerce;
3) That the defendant was associated with or employed by the enterprise;
4) That the defendant engaged in a pattern of racketeering activity or the collection of an unlawful debt; and

5) That the defendant conducted or participated in the conduct of the enterprise through that pattern of racketeering activity or collection of an unlawful debt.

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1962(c) | N/A | 20 years | 3 years | $250,000 or twice the gross proceeds derived from the offense | $100 |

        a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

        b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

        c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

        d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

        e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

        f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant

authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be

admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

       g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

       h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

       a. This Office and the Defendant agree that the applicable base offense level is **19** pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2E1.1(a)(1);

       b. The offense level is increased by **4** levels because the Defendant was a leader or organizer and the criminal activity involved five or more participants or was otherwise extensive pursuant to U.S.S.G. § 3B1.1(a).

       c. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease

in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

**Accordingly, the Defendant's ANTICIPATED combined final offense level will be 20.**

7.   There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.   Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Obligations of the Parties

9.   At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

Waiver of Appeal

10.   In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.   The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.   The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i.   The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

ii.   This Office reserves the right to appeal any sentence below a statutory minimum.

c.   The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Defendant's Conduct Prior to Sentencing and Breach

11.   Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

12.   If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

13. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

14. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

*Lauren Perry*
Lauren E. Perry
Sean R. Delaney
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7-30-2019
Date

*Corey Alston*
Corey Alston

7

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

7/30/19
Date

_____
Jenifer Wicks, Esq.



## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The defendant, **COREY ALSTON**, was incarcerated at the Maryland Correctional Institute Jessup ("MCIJ"), a Maryland Department of Public Safety and Correctional Services ("DPSCS") prison operated in Jessup, Maryland, in Anne Arundel County. **ALSTON**, along with other inmates, employees, and associates of MCIJ, conducted and participated in MCIJ's affairs through a pattern of racketeering activity that included offenses involving drug distribution and bribery. MCIJ was an "enterprise" that affected interstate commerce.

While an inmate at MCIJ, **ALSTON** conspired with **TYIRISHA JOHNSON, JAMIA LAWSON, ASHLEY ALSTON,** and **ALDON ALSTON**, who obtained and packaged contraband, met with the correctional officers and employees, and managed the proceeds of illegal contraband sales for **ALSTON**. Through these facilitators, **ALSTON** obtained contraband consisting of but not limited to Suboxone strips, Percocet, MDMA, K2, and tobacco. The contraband was brought into MCIJ by Correctional Officer ("CO") **JANEL GRIFFIN** and MCIJ Contract Nurse **JOSEPH NWACHA** in exchange for bribe payments. **ALSTON** also conspired with fellow inmate **SCHVEL MACK** to obtain the contraband through bribes and to sell the contraband to other inmates.

More specifically, between April 2017 and November 2017, **ALSTON** were intercepted over court-authorized wiretaps and in recorded jail calls discussing contraband smuggling with his co-conspirators. **ALSTON** was recorded discussing obtaining and packaging contraband, meetings between his facilitators and **GRIFFIN** and **NWANCHA**, and the payment of bribes to them.

Starting in at least April 2017, at the request of **ALSTON**, **JOHNSON** met several times with **GRIFFIN**. In a series of recorded jail calls in April and May 2017, **ALSTON** and **JOHNSON** discussed **JOHNSON** meeting with **GRIFFIN** so that **GRIFFIN** could bring Suboxone, K2, and tobacco into MCIJ.

For example, on or about April 20, 2017, in a recorded jail call, **ALSTON** instructed **JOHNSON** to contact **GRIFFIN** and ask her to "bring the rest of the stuff tomorrow" including tobacco and Suboxone and to find out what **GRIFFIN** would charge to smuggle in a contraband phone. **JOHNSON** informed **ALSTON** that **GRIFFIN** agreed to bring some of it into the facility.

On or about May 2, 2017, in a recorded jail call, **ALSTON** told **JOHNSON** to talk to **GRIFFIN** and "tell her you got all the money ready…she can come and give it to me tomorrow." In a second recorded jail call that day, **JOHNSON** informed **ALSTON** that she was "meeting with the girl [**GRIFFIN**] tomorrow." **JOHNSON** and **GRIFFIN** then met on May 3, 2017 for the purpose of **JOHNSON** providing contraband to **GRIFFIN**.

In August 2017, **ALSTON**, on a recorded phone call, directed **JOHNSON** to provide **GRIFFIN** $800 in cash as payment for **GRIFFIN** smuggling contraband into MCIJ, which **JOHNSON** subsequently did. Two days later, **GRIFFIN** deposited $700 cash into her bank account.

Around the same time, **ALSTON** was also recorded instructing **ASHLEY ALSTON** and **ALDON ALSTON** to obtain, package, and facilitate the smuggling of contraband. For example, on or about May 10, 2017, in a recorded jail call, **ALSTON** asked **ASHLEY ALSTON** to package Suboxone for entry into the prison telling her that **JOHNSON** was "gonna show you how to do it…she gonna show you how to take them out, put them in on the plastic, fold it over." **ALSTON** told **ASHLEY ALSTON** that **GRIFFIN** would "pick it up."

On or about June 6, 2017, in a recorded jail call, **ASHLEY ALSTON** informed **ALSTON** that she had 60 Suboxone strips that were selling for $10 each. **ALSTON** stated that he was "gonna buy them Thursday" and that "Ashley gonna come get them."

On or about July 2, 2017, in a recorded jail call, **ALSTON** asked **ALDON ALSTON** to help him obtain contraband. **ALSTON** asked **ALDON ALSTON** for "2Gs" and **ALDON ALSTON** confirmed that the going rate was somewhere between $80 and $90 each and that **ALDON ALSTON** would "check on em."

Beginning in or about September 2017, **ALSTON** began bribing MCIJ contract nurse **NWANCHA** to bring contraband into MCIJ. **ALSTON** instructed **JOHNSON** to meet with **NWANCHA** and, on November 5, 2017, **NWANCHA** and **JOHNSON** met. During the meeting, **JOHNSON** provided **NWANCHA** with bribe money, as well as contraband, including controlled substances, to be smuggled into **ALSTON** at MCIJ.

On or about November 14, 2017, **ALSTON** informed **NWANCHA** that he would have another co-conspirator, **LAWSON**, send **NWANCHA** a bribe payment via Western Union. **NWANCHA** agreed to bring contraband phones into **ALSTON** the following day.

On or about November 16, 2017, in a recorded phone call over a contraband phone, **JOHNSON** informed **ALSTON** that she collected approximately $500. **ALSTON** told **JOHNSON** to give the money to **ALDON ALSTON** so that **ALDON ALSTON** could give "the man [NWANCHA] some money." The following day, **ALSTON** informed **NWANCHA** that **ALDON ALSTON** would provide **NWANCHA** $500 and the additional $300 would be transferred to him electronically. **NWANCHA** later confirmed with **ALSTON** that **ALDON ALSTON** had provided him the $500.

On or about November 20, 2017, **ALSTON** sent **NWANCHA** a text message asking **NWACHA** to smuggle a pocket knife into the facility for **ALSTON**. **ALSTON** told **NWANCHA**, "I want to be prepared because not running from no one. I want to be the only one in the jail with a pocket knife to man." **NWANCHA** agreed to bring the knife into MCIJ.

On or about November 24, 2017, **ALSTON** asked **NWANCHA** to meet with **LAWSON** for the purpose of providing a bribe payment and contraband. **ALSTON** informed **NWANCHA**

that **LAWSON** had approximately $900 for him, as well as a contraband phone, K2, and an ounce of cocaine. **NWANCHA** agreed to the meet. That same day, **ALSTON** instructed **LAWSON** to meet with **NWANCHA** and to "get up there, give him the shit, keep it moving."

On or about November 28, 2017, **NWANCHA** was stopped at MCIJ in possession of approximately 230 grams of K2 intended for MCIJ inmates, including **ALSTON**.

**ALSTON** agrees that he associated with the enterprise described in the Indictment and knowingly participated in the affairs of that enterprise. **ALSTON** further agrees that the Racketeering Acts in which he is charged in the Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.

SO STIPULATED:

_____
Lauren E. Perry
Sean R. Delaney
Assistant United States Attorneys

_____
Corey Alston
Defendant

_____
Jenifer Wicks, Esq.
Counsel for Defendant